WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

INSIGHT PUBLIC SECTOR, INC., )
)
)
                Plaintiff, )
)
vs. )
)
PROTEAM SOLUTIONS, INC., )
)    No. 2:14-cv-2529-HRH
                Defendant. )
_____)

O R D E R

Cross-Motions for Summary Judgment

Plaintiff moves for summary judgment.[1] This motion is opposed[2] and defendant cross-moves for partial summary judgment.[3] Defendant's cross-motion is opposed.[4] Oral argument was requested and has been heard.

Procedural History

Plaintiff Insight Public Sector, Inc. (IPS) is an Illinois-based subsidiary of Insight Enterprises, Inc. which sells computer hardware, software and related products to

---

[1]Docket No. 83.

[2]Docket No. 88.

[3]Docket No. 84.

[4]Docket No. 87.

government agencies. Defendant Proteam Solutions, Inc. is a qualified Minority Business Enterprise (MBE) contractor which has conducted business with the state government in Ohio for many years. "Pursuant to regulations adopted by the State of Ohio, departments and agencies of the State government are required to purchase a portion of all goods and services from Minority Business Enterprises."[5] "MBEs are required to offer goods and services to State agencies in conformity with State Term Schedules (STSs), which establish ceiling prices at which specified goods can be offered for sale."[6]

Keith Stevens, Proteam's president, avers that he was contacted by IPS in early 2010 because IPS "wanted to 'partner' with Proteam for the purpose of selling computer products through the Ohio MBE program."[7] In March 2010, the parties entered into an agreement under which "Proteam agree[d] to provide IPS with information about specific sales opportunities from public entities within the State of Ohio that Proteam believes may have a need for or interest in procuring information technology products."[8] The 2010 Agreement provided that "Proteam will take no further action on IPS' behalf with respect to such sales

---

[5] Affidavit of Keith Stevens at ¶ 3, Exhibit A, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[6] Id.

[7] Id. at ¶ 4.

[8] Agreement between DKS Group, Inc. d/b/a Proteam Technical and Insight Public Sector, Inc. at 1, ¶ 1, Exhibit 1, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

opportunities unless IPS authorizes Proteam to do so in writing."[9]  The 2010 Agreement further provided that

> [a]ny sales opportunities identified by Proteam and selected by IPS in writing pursuant to this Section 1 shall be referred to herein as "Designated Opportunity" or "Designated Opportunities."  Proteam will introduce IPS to Designated Opportunities and facilitate initial communications between the Designated Opportunities and IPS for the sole purpose of bringing about the sale of information technology products.[[10]]

The 2010 Agreement provided that

> IPS agree[d] to pay Proteam by the 30th working day following the end of each calendar quarter during the term of this Agreement, a royalty in the amount of fifty percent (50%) of the gross profit .... for closed sales, net of returns, fees, and shipping, generated by orders specifically identified as Designated Opportunities for which IPS received timely payment in full during that calendar quarter....[[11]]

The 2010 Agreement further provided that "[t]his royalty shall apply only to purchase orders that reference Proteam in the body of the order document.  IPS will not be obligated to compensate Proteam for orders that are not appropriately designated by the Designated Opportunity at the time of order entry."[12]

---

[9]Id.

[10]Id.

[11]Id. at 1, ¶ 2.1.

[12]Id.

The 2010 Agreement also provided that IPS was to "provide a quarterly report to Proteam of all closed sales, net of returns, generated by orders specifically identified as Designated Opportunities for which IPS received timely payment in full during that calendar quarter...."[13]

The 2010 Agreement provided that it would "continue for a period of one year" and that the Agreement would "automatically renew for successive one year periods unless either party provides written notice of its decision to terminate the agreement in accordance with Section 18...."[14] Section 18 provided, in relevant part, that "[e]ither party may terminate this Agreement without cause upon sixty (60) days prior written notice to the other party."[15]

At the same time the parties entered into the 2010 Agreement, they executed First and Second Addendums to the 2010 Agreement. The First Addendum provided that "Proteam shall ensure that all orders received by it under this contract will be made out to IPS. The end users will order all products directly through IPS."[16] The First Addendum also provided that it would be a material breach if "Proteam takes an order directly from a Public Sector Agency against the IPS STS for products or services" and if "Proteam accepts payments from [a]

---

[13]Id. at 2, ¶ 3.

[14]Id. at ¶ 7.

[15]Id. at 4, ¶ 18.1.

[16]First Addendum to Agreement Between DKS Group, Inc. d/b/a/ Proteam Technical and Insight Public Sector, Inc. at 1, ¶ 2.2, Exhibit 1, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

Public Sector Agency for an order against the IPS STS."[17] The Second Addendum provided that "Proteam shall ensure that all orders received by it under this contract will be made out to IPS. The end users will order all products directly through IPS."[18]

There is no dispute that the parties never followed the sales procedure laid out in the 2010 Agreement because Ohio's MBE program required that state agency purchase orders be made out to the MBE. Instead, Proteam would receive requests for quotes (RFQs) from Ohio state agencies and then it would forward the RFQs to IPS, which would quote a price. Proteam would then add a certain percentage to that price and submit the quotes to the State agencies. Proteam could decide what that percentage was although IPS provided input as to what the mark-up should be.[19] If the State agencies accepted the quotes, then Proteam submitted purchase orders to IPS for products to be shipped directly to Ohio governmental agencies. After the orders were filled by IPS, the Ohio governmental agencies paid Proteam for the products pursuant to invoices issued to them by Proteam. And Proteam paid IPS pursuant to invoices issued to Proteam by IPS.

---

[17] Id. at 3, ¶ 7.

[18] Second Addendum to Agreement Between DKS Group, Inc. d/b/a Proteam Technical and Insight Public Sector, Inc at 1, ¶ 2.2, Exhibit 1, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

[19] Deposition at Keith Stevens at 70:17-22, Exhibit B, Insight Public Sector Inc.'s Response to ... Proteam Solutions Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 87.

From May 2010 through October 2013, the parties followed the foregoing procedure for the sales that IPS made to Proteam. For all of the sales prior to July 2013, Proteam timely paid IPS. However, when IPS invoiced Proteam for the July-October 2013 sales, which totaled $726,498.07, Proteam did not pay the total amount due. After taking into consideration a credit that Proteam had, the total due under the July-October 2013 invoices was $702,950.07, but Proteam only paid IPS $350,000.

Proteam contends that it withheld some of the payment for the July-October 2013 invoices because it had come to believe that IPS was not paying the correct royalty amount under the 2010 Agreement. Stevens avers that

> [d]uring the second half of 2013, I obtained the SEC form 10-K shareholder reports of IPS parent corporation Insight Enterprises, Inc. Those reports state that during years 2010-2012, Insight Enterprises' gross profit margin on sales was 13.6%.[20]

Given that "Proteam's gross compensation was 1.62% of total sales of IPS-supplied goods[,]" Proteam believed it had not been properly paid its royalty pursuant to the 2010 Agreement and Stevens "delayed Proteam's remittance of the last State agency payments and requested that IPS substantiate Proteam's Contract royalties."[21]

---

[20]Stevens Affidavit at ¶ 13, Exhibit A, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[21]Id. at ¶¶ 12 & 15.

On November 18, 2013, Proteam gave IPS 60-day written notice that Proteam intended to terminate the 2010 Agreement without cause.[22] Proteam stated that it was "terminating [its] agreement with Insight Public Sector due to the diminishing profitability of our efforts. It is our hope that we can unwind our working relationship in a professional and organized manner."[23]

The parties attempted to resolve the dispute over the remaining $350,000 that IPS believed Proteam owed, but they were unable to reach a resolution. On October 16, 2014, IPS commenced this action in state court. The matter was subsequently removed to this court on the basis of diversity jurisdiction. In its complaint, IPS asserts a breach of contract claim and an unjust enrichment claim. IPS alleges that Proteam still owes it $352,950.07.[24]

Proteam has asserted three counterclaims against IPS: 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, and 3) intentional misrepresentation. Proteam alleges that IPS has breached the 2010 Agreement and the duty of good faith and fair dealing by not paying Proteam all of the royalties it is due and that IPS has concealed the gross profits realized from the Proteam-brokered sales.[25]

---

[22]Exhibit A-1, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[23]Id.

[24]Complaint at 4, ¶ 17, attached to Notice of Removal, Docket No. 1.

[25]Amended Counterclaim at 6-7, Docket No. 28.

IPS now moves for summary judgment on its breach of contract claim and on each of Proteam's counterclaims. Proteam cross-moves for summary judgment on IPS's breach of contract and unjust enrichment claims.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

IPS's Breach of Contract Claim

IPS contends that each of the July-October 2013 Proteam purchase orders and corresponding IPS invoices constituted a separate contract, contracts which Proteam

breached by not paying IPS the full amount due under the invoices. Under Arizona law,[26] "[t]o bring an action for [a] breach of [a] contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." Graham v. Asbury, 540 P.2d 656, 657 (Ariz. 1975). "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." K-Line Builders, Inc. v. First Federal Sav. & Loan Ass'n, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983). A purchase order can constitute a contract. Koenen v. Royal Buick Co., 783 P.2d 822, 826 (Ariz. Ct. App. 1989).

IPS argues that the July-October 2013 purchase orders and corresponding invoices can constitute enforceable contracts because by submitting the purchase orders, Proteam offered to purchase goods for certain prices and requested that IPS send the goods to Proteam's clients. IPS accepted Proteam's offer by sending the requested goods to Proteam's customers and then sent invoices to Proteam which contained sufficient terms and conditions. If the

---

[26]Each invoice provides:

> The Terms and Conditions and Return Policy and Procedures set forth on www.ips.insight.com/TermsandConditions are specifically incorporated herein unless purchase is made pursuant to a separate written agreement in which case the terms of the separate written agreement shall govern.

Invoice at 2, Exhibit 10 at 2, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83. The Terms and Conditions on IPS's website provide that "[t]his Agreement will be governed by the substantive laws of the state of Arizona without giving effect to any choice of law rules." Exhibit 11 at 2, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

July-October 2013 purchase orders and corresponding invoices are enforceable contracts, then IPS argues that there is no dispute that Proteam has not paid the full amount due under those contracts and thus Proteam has breached its contracts with IPS.

Proteam argues, however, that the 2010 Agreement governs the parties' transactions. This argument is based on Proteam's contention that the parties orally modified the sales procedure portion of the 2010 Agreement. The court is mindful that Proteam's answer and amended counterclaim are devoid of any reference to an oral modification, but the court is not prepared to conclude that Proteam cannot advance an oral modification argument.

Although the 2010 Agreement contained a provision that any amendments had to be in writing, "[u]nder Illinois law,[27] parties to a written contract may alter or modify its terms by a subsequent oral agreement, even though the terms of the contract preclude oral modification." A.W. Wendell and Sons, Inc. v. Qazi, 626 N.E.2d 280, 287 (Ill. Ct. App. 1993).[28] "The existence of an oral modification—as well as its terms, conditions, and the intent of the parties—are all questions of fact that must be determined by a trier of fact."

---

[27]The 2010 Agreement contained a choice of law clause that provided that "[t]his agreement shall be governed by and construed in accordance with the laws of the State of Illinois." 2010 Agreement at 5, ¶ 22, Exhibit 1, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

[28]The same is true if Arizona law applies. See Phoenix Orthopaedic Surgeons, Ltd. v. Peairs, 790 P.2d 752, 755–56 (Ariz. Ct. App. 1989) (quoting Park v. Dealers Transit, Inc., 596 F.2d 203, 204 (7th Cir.1979), overruled on other grounds by Valley Medical Specialists v. Farber, 982 P.2d 1277 (Ariz. 1999) ("'The general rule in most jurisdictions is that parties to a written contract may alter or modify its terms by a subsequent oral agreement even though the contract precludes oral modification'").

Household Financial Services, Inc. v. Coastal Mortgage Services, Inc., 152 F. Supp. 2d 1015, 1022 (N.D. Ill. 2001).[29]

Proteam has come forward with sufficient evidence to create a question of fact as to whether the 2010 Agreement was orally modified. First, Proteam has offered the affidavit of Stevens, in which he avers that

> IPS and Proteam agreed to amend the Contract to conform with Ohio MBE requirements and IPS agreed to draft a written Contract amendment which memorialized that oral agreement. However, IPS never sent a written amendment of the Contract to Proteam. Instead, commencing in 2010 and continuing through calendar year 2013, IPS and Proteam operated in accordance with their oral Contract amendment. Ohio agencies issued all purchase orders to Proteam, and remitted their corresponding payments to Proteam.[[30]]

IPS argues that Proteam cannot rely on Stevens' affidavit because it was not disclosed during discovery and because it contradicts his deposition testimony. But even assuming that these arguments have merit, Proteam has offered other evidence that creates a genuine issue of material fact as to whether there was an oral modification of the 2010 Agreement. Mark Woods, who was a territory account manager for IPS, was asked at his deposition if it was his "understanding that all of these deals were governed by that contract that was in place

---

[29]The existence of an oral modification is also a question of fact under Arizona law. Lindsey v. Univ. of Ariz., 754 P.2d 1152, 1157 (Ariz. Ct. App. 1987).

[30]Stevens Affidavit at ¶ 7, Exhibit A, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[between] IPS and Proteam?"[31] Woods answered that "[l]egally, yeah, all of the deals were governed by that contract."[32] David O'Connor, who became Proteam's primary IPS contact after Woods left IPS's employ, testified that he understood that the relationship between IPS and Proteam was governed by the 2010 Agreement.[33] Woods' and O'Connor's testimony[34] creates a genuine issue of material fact as to whether the parties had orally modified the 2010 Agreement such that the parties' transactions continued to be governed by that contract.

Other evidence that suggests that there may have been an oral modification of the 2010 Agreement includes the "lockbox" evidence. In the fall of 2010, the parties exchanged numerous emails about setting up a "lockbox" arrangement so that the Ohio state agencies could send their payments directly to a bank lockbox for deposit into an account held by

---

[31]Deposition of Mark Woods at 90:1-3, Exhibit B, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[32]Id. at 90:4-5.

[33]Deposition of David O'Connor at 23:18-21, Exhibit C, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[34]Proteam also cited to a statement by Justin Hurlburt but that statement was made in an email marked "Private and Confidential Settlement Communications under Rule 408." Exhibit A-2, Defendant Proteam Solution Inc.'s Motion for Partial Summary Judgment, Docket No. 84. The text of FRE 408 "is clear: evidence from settlement negotiations may not be considered in court 'when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction.'" Rhoades v. Avon Products, Inc., 504 F.3d 1151, 1161 (9th Cir. 2007) (quoting FRE 408) (emphasis omitted). Thus, Proteam cannot rely on Hurlburt's statement.

Proteam but from which only IPS could make withdrawals.[35] This is evidence that the parties knew they could not comply or were not complying with the sales procedure provision of the 2010 Agreement, which creates an inference that the parties had orally modified the 2010 Agreement.

Other evidence that suggests that the parties had orally modified the 2010 Agreement is the Third Addendum. The parties executed a Third Addendum to the 2010 Agreement 18 months after they started doing business with each other. This suggests that the parties had orally modified the 2010 Agreement, as opposed to abandoning it, because it would not have been necessary to execute an addendum if the 2010 Agreement had been abandoned.

In sum, there is a genuine issue of material fact as to whether the parties orally modified the 2010 Agreement. Neither party is entitled to summary judgment on IPS's breach of contract claim.

### IPS's Unjust Enrichment Claim

Because there are disputes of fact as to IPS's breach of contract claim, Proteam is not entitled to summary judgment on IPS's unjust enrichment claim.

### Proteam's Breach of Contract Counterclaim

Proteam's breach of contract counterclaim is based on allegations that IPS breached the 2010 Agreement by not properly paying Proteam the fifty percent royalty. IPS argues that

---

[35]Exhibit E-3, Defendant Proteam's Memorandum in Opposition to Plaintiff Insight Public Sector, Inc.'s Motion for Summary Judgment, Docket No. 88.

Proteam's breach of contract counterclaim fails because Proteam did not perform under the 2010 Agreement. IPS argues that under the express language of the 2010 Agreement, Proteam is only entitled to a royalty payment if it complied with the terms of the 2010 Agreement, which Proteam did not. The First Addendum to the 2010 Agreement provided that Proteam was to "ensure that all orders received by it under this contract will be made out to IPS. The end users will order all products directly through IPS."[36] And the 2010 Agreement provided that the "royalty shall apply only to purchase orders that reference Proteam in the body of the order document" and that "IPS will not be obligated to compensate Proteam for orders that are not appropriately designated by the Designated Opportunity at the time of order entry."[37] Because it is undisputed that Proteam invoiced the Ohio governmental agencies and received payment from them and Proteam then paid IPS, IPS argues that it is undisputed that Proteam did not perform under the contract, which means that Proteam's breach of contract counterclaim fails.

But, as discussed above, there is a genuine issue of material fact as to whether the parties orally modified the sales provisions in the 2010 Agreement. If the 2010 Agreement were orally modified, then IPS's foregoing argument would fail. But, IPS argues that even if the parties orally modified the 2010 Agreement and in doing so, intended to retain the

---

[36]First Addendum to Agreement [etc.] at 1, ¶ 2.2, Exhibit 1, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

[37]2010 Agreement at 1, ¶ 2.1, Exhibit 1, Insight Public Sector Inc.'s Motion for Summary Judgment, Docket No. 83.

royalty payment provision, it would still be entitled to summary judgment on Proteam's breach of contract counterclaim because Proteam has waived its right to royalty payments by continuing to engage in sales transactions for three years without enforcing this right. "An implied waiver of a legal right may arise when conduct of the person against whom waiver is asserted is inconsistent with an intent to enforce that right." Wells v. Minor, 578 N.E.2d 1337, 1346 (Ill. Ct. App. 1991). "A party to a contract may not lull another into false assurance that strict compliance with a contract duty will not be required and then sue for noncompliance." Id. Yet, that is exactly what Proteam has done here according to IPS; Proteam has lulled IPS into believing that it did not believe it was due royalty payments under the 2010 Agreement but rather that its profits would be determined by the mark-up it made on the goods that it obtained from IPS and then resold to its customers.

While IPS's waiver argument has some merit, there are questions of fact as to what the parties orally agreed to. These questions of fact preclude summary judgment on Proteam's breach of contract counterclaim.

### Proteam's Breach of the Implied Covenant Counterclaim

Proteam's breach of the implied covenant of good faith and fair dealing counterclaim is based on the same allegations as Proteam's breach of contract counterclaim. Under Illinois law, "an independent cause of action for breach of th[e] implied covenant does not exist except in the narrow context of cases involving an insurer's obligation to settle with a third

party who has sued a policyholder." D'Attomo v. Baumbeck, 36 N.E.3d 892, 912 (Ill. Ct. App. 2015).

Proteam concedes that it cannot have an independent cause of action for breach of the implied covenant of good faith and fair dealing[38] but argues that this counterclaim should not be dismissed because it is entitled to present evidence that IPS breached the 2010 Agreement by dealing with Proteam in bad faith and unfairly. While Proteam may be able to present evidence relating to a breach of the implied covenant of good faith and fair dealing as part of its breach of contract claim, that does not mean that Proteam's implied covenant counterclaim should not be dismissed. Proteam has no right to assert an independent breach of the implied covenant of good faith and fair dealing counterclaim. Thus, IPS is entitled to summary judgment on this counterclaim.

### Proteam's Intentional Misrepresentation Counterclaim

Proteam contends that its third counterclaim is actually a claim for fraudulent concealment, not an intentional misrepresentation claim, and that this claim is governed by Illinois law. Under Illinois law,

> [t]o prove fraudulent concealment, a plaintiff must establish that (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably

---

[38]Defendant Proteam's Memorandum in Opposition to Plaintiff Insight Public Sector, Inc.'s Motion for Summary Judgment at 9, Docket No. 88.

>relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages.

Bauer v. Giannis, 834 N.E.2d 952, 957–58 (Ill. Ct. App. 2005).[39]

Proteam argues that its fraudulent concealment claim is based on allegations that IPS concealed the amount of gross profit that it was earning on the Proteam-brokered sales, sales that were covered by the 2010 Agreement, and on allegations that IPS purchased all of its products from its sister company, IDUSA, and that IPS has concealed what it actually paid for these products, which means that Proteam had no way of knowing what royalties it should have been paid.

The only evidence Proteam has that IPS was concealing the amount of gross profit it was earning is Stevens' averment that Insight Enterprises' gross profit margin in 2010-2012

---

[39]The elements of a fraudulent concealment claim under Arizona are similar:

>(1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

Coleman v. Watts, 87 F. Supp. 2d 944, 951–52 (D. Ariz. 1998)

was 13.6%.[40] This evidence does not create a genuine issue of matieral fact as to whether IPS was concealing its gross profit on the products that Proteam was reselling. Stevens' averment does not tie Insight Enterprises' gross profit margin to IPS's profit margin. IPS is entitled to summary judgment on Proteam's fraudulent concealment counterclaim.

## Conclusion

IPS's motion for summary judgment[41] is granted in part and denied in part. IPS's motion is granted as to Proteam's breach of the implied covenant of good faith and fair dealing counterclaim (counterclaim two) and Proteam's fraudulent concealment counterclaim (counterclaim three). It is otherwise denied. Proteam's motion for partial summary judgment[42] is denied.

DATED at Anchorage, Alaska, this 10th day of November, 2016.

/s/ H. Russel Holland
United States District Judge

---

[40] Stevens Affidavit at ¶ 13, Exhibit A, Defendant Proteam Solution, Inc.'s Motion for Partial Summary Judgment as to Plaintiff's Complaint, Docket No. 84.

[41] Docket No. 83.

[42] Docket No. 84.